IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(NORTHERN DIVISION)

| | |
|---|---|
| **SHANE SIMMONS**<br>7926 Dunhill Village Circle<br>Apt. 304<br>Windsor Mill, Maryland 21244<br>*Resident of Baltimore County*<br><br>Plaintiff,<br><br>*Individually and on Behalf of All Similarly Situated Employees*<br><br>v.<br><br>**LOOMIS ARMORED US, LLC**<br>2500 Citywest Boulevard<br>Houston Texas, 77042<br><br>Serve:  The Corporation Trust, Inc.<br>          2405 York Road<br>          Suit 201<br>          Timonium, Maryland 21093<br><br>Defendant. | Civil Action No.:<br><br><br><br>Collective Action Claim<br><br><br><br>Jury Trial Requested |

**COMPLAINT FOR WAGES OWED**

SHANE SIMMONS, Plaintiff, by and through his undersigned counsel and The Law Offices of Peter T. Nicholl, hereby submits his Complaint against LOOMIS ARMORED US, LLC, Defendant, to recover unpaid wages, liquidated damages, interest, reasonable attorneys' fees and costs under Section 16(b) of the Federal Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, *et seq*. (hereinafter, "FLSA"); unpaid wages, liquidated damages, interest, reasonable attorneys' fees and costs under Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl. §§ 3-401, *et seq*. (hereinafter, "MWHL"); and unpaid wages, interest, treble damages, reasonable

attorneys' fees and costs under the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl., §§ 3-501, *et seq*. (hereinafter, "MWPCL"), and in support thereof, states as follows:

## INTRODUCTION AND BACKGROUND

Defendant provides cash handling and deposit services to a wide range of customers. These services center on securely transporting cash and other valuables in armored vehicles to and from banks, safety deposit boxes, automated teller machines and various businesses. Defendant provides general maintenance services for its customers as well.

Defendant hired Plaintiff and other similarly situated employees to assist with providing services to its customers. Plaintiff and other similarly situated employees were titled Armed Service Technicians ("ASTs"). Their main focus was to provide armed courier and delivery support. They were primarily responsible for transporting valuables in Defendant's vehicles. ASTs either worked as armed drivers, who were responsible for operating the vehicles, or armed messengers, who served as couriers.

Regardless of the specific task they performed, ASTs were all compensated on an hourly basis. However, Defendant failed to properly pay its ASTs time and a half (1.5) their regular hourly rate when they worked over forty (40) hours a week.

Over the course of their workweek, ASTs drove and rode in a variety of vehicles. Some of these vehicles weighed in excess of ten thousand (10,000) pounds. However, many vehicles did not. For example, Plaintiff routinely drove a smaller Ford Explorer which weighed well under five thousand (5,000) pounds.

Because ASTs routinely utilized vehicles weighing under ten thousand (10,000) pounds, they were "covered employees" as defined by the SAFTEA-LU Technical Corrections Act of 2008

("TCA"). Accordingly, these employees were not subject to the Motor Carrier Act ("MCA") exemption to the FLSA and entitled to overtime.

Defendant willfully failed to pay overtime to Plaintiff and other ASTs, in direct violation of the FLSA. This common policy necessitated the filing of this Complaint.

## PARTIES

1. Plaintiff Shane Simmons ("Plaintiff") is an adult resident of Baltimore County, Maryland.

2. Loomis Armored US, LLC ("Defendant") is an international cash handling services corporation registered to do business in Maryland.

3. Defendant's principal office is located in Houston Texas. The address of this office is 2500 Citywest Boulevard, Suite 900, Houston, Texas 77042.

4. Defendant is subject to the FLSA due to the amount of revenues generated; Defendant's annual dollar value of business exceeds $500,000.00.

5. At all times relevant to this Complaint, Plaintiff and Defendant engaged in interstate commerce as part of their employment arrangement.

6. At all times throughout Plaintiff's employment, Defendant fell within the definition of the term employer under the FLSA, 29 U.S.C. § 203(d), MWHL, § 3-401(b) and the MWPCL, § 3-501(b).

7. From approximately April 2018 to January 2019, Plaintiff was employed by Defendant as an Armed Service Technician ("AST").

8. At all times relevant to this Complaint, Plaintiff and other ASTs worked as non-exempt employees for Defendant. The duties they performed did not satisfy the duties tests contained within the exemptions specified under the FLSA, MWHL, or the MWPCL.

9. At all times relevant, Defendant and its agents controlled the administration of its business and set employee schedules, including the schedules of Plaintiff and other similarly situated employees.

10. Defendant possessed and exercised the authority to determine the hours worked by Plaintiff and other similarly situated ASTs.

11. Defendant made all decisions relating to Plaintiff and other ASTs' rate and method of pay.

12. Defendant actively managed Plaintiff and similarly situated ASTs.

13. Defendant controlled and supervised the work that Plaintiff and others similarly situated performed.

14. Defendant and its agents regularly met with Plaintiff and its other ASTs to ensure that Defendant's practices and policies were properly communicated, understood and followed.

15. Defendant exercised authority and control over Plaintiff and other similarly situated employees' tasks and the manner in which those tasks were completed.

16. Defendant had the power and authority to change Plaintiff and other ASTs' assignments and the course of their duties.

17. Plaintiff and other similarly situated employees recognized Defendant's authority and followed Defendant's instructions.

## JURISDICTION AND VENUE

18. Original jurisdiction in this Honorable Court is expressly provided by FLSA, 29 U.S.C. § 207, *et seq*. This Court also has subject matter jurisdiction under 28 U.S.C. § 1331, as this matter presents a federal question.

19. Discretionary supplemental jurisdiction of Plaintiff's Maryland state law claims is provided by 28 U.S.C. § 1367(a); the state law claims form part of the same case or controversy and derive from a common nucleus of operative facts, on which Plaintiff's federal claims are based.

20. No reasons exist that would force this Honorable Court to decline jurisdiction; the state law claims (i) do not raise novel or complex issues of state law, (ii) do not substantially predominate the claims over which this Honorable Court has original jurisdiction and (iii) no exceptional circumstances exist that would constitute a compelling reason for declining jurisdiction, thereby satisfying 28 U.S.C. 1367(c).

21. Pursuant to 28 U.S.C. § 1391(b), venue is appropriate; the unlawful acts central to this matter occurred primarily within the State of Maryland.

22. This Honorable Court has personal jurisdiction over Defendant; Defendant is a corporation incorporated under the laws of Maryland and Defendant conducts sufficient business within the forum state so as to constitute a submission to its laws.

**FACTUAL ALLEGATIONS FOR ALL CLAIMS**

23. Plaintiff and other similarly situated employees hold or held the title of Armed Service Technician ("AST"). Plaintiff and other ASTs were hired by Defendant to perform tasks related to the secure transportation and storage of cash, gold, jewelry and other valuables. Their tasks centered on transporting these items in armored vehicles to and from banks, safety deposit boxes, automated teller machines and various businesses.[1]

---

[1] In addition to these regularly scheduled tasks, Plaintiff and other ASTs would frequently have to perform vehicle maintenance on the older vehicles in Defendant's fleet.

5

24. Plaintiff and other ASTs generally worked in one of two (2) roles for Defendant, being employed either as a "driver" or a "messenger."[2]

25. Drivers were responsible for driving Defendant's vehicles along their designated routes. Messengers were responsible for providing courier, delivery, pick-up and maintenance once they arrived to their location.

26. Upon arrival to their location, drivers were responsible for looking out for Defendant's messengers, which required them to stay inside the vehicle at all times.

27. In order to perform their tasks, messengers were required to exit the vehicle at each stop made.

28. ASTs all had to complete a pre-determined number of stops each day. Each stop was specific to a location where a particular service was required.

29. To ensure they made all of their assigned stops, ASTs were required to track their start and end times in a daily log-book. They were also responsible for tracking the mileage covered by the particular vehicle to which they were assigned.

30. Plaintiff and other ASTs were assigned to a wide range of vehicles. The vehicle to which they were assigned varied on a day-to-day basis.

31. For some routes, Plaintiff and other ASTs were assigned to utilize a large, armored vehicle. All of these vehicles weighed over ten thousand (10,000) pounds.

---

[2] All newly hired ASTs begin as drivers. After being approved to carry a weapon, ASTs are able to perform the tasks attributable to messengers and are given clearance to leave the armored vehicle.

32. For other routes, Plaintiff and other ASTs would drive or ride in smaller vans or pickup trucks. They were typically assigned these smaller vehicles when having to complete smaller, or quicker jobs. These vehicles weighed under ten thousand (10,000) pounds.

33. Plaintiff and other ASTs routinely drove or rode in trucks and vans that weighed under ten thousand (10,000) pounds. In certain workweeks, they would drive or ride in this class of vehicles exclusively.

34. Regardless of the type of vehicle they were assigned, or whether they were employed as a driver or a messenger, Plaintiff and other ASTs were all responsible for the safe operation of the vehicle.

35. Plaintiff and other ASTs were typically scheduled to work from 6:00 a.m. to 2:00 p.m. Monday through Friday. However, the time that an AST had to report to work was dependent upon the particular route they were assigned. For instance, ASTs with farther destinations were required to begin their workday earlier.

36. Plaintiff and other ASTs would also typically arrive to work an hour or more in advance of the time their shifts were scheduled to begin in order to inspect and load their vehicle. They were also required to get a manager to "sign-off" on the vehicle to ensure that it was properly loaded.[3]

37. Having to complete all of the aforementioned tasks before they could begin their route had the effect of regularly elongating Plaintiff and other ASTs' workday.

38. The tasks that Plaintiff and other ASTs had to perform once they finished their routes also resulted in extending their workday. Although Plaintiff and other ASTs were typically

---

[3] If a technical failure with the vehicle was discovered, Plaintiff and other ASTs would have to obtain permission from a manager to "sign-out" a different vehicle before they could begin their route.

scheduled to leave work at 2:00 p.m., it was routine for them to continue working until 5:00 p.m. or later. The time associated with having to unload their vehicles, having all the valuables they transported scanned and having to wait in-line for a manager to check their equipment regularly caused ASTs to work well after the time their shifts were scheduled to end.

39. There were other duties that resulted in Plaintiff and other ASTs having to work hours outside of their schedules. For instance, the time that it took to perform the regular maintenance of Defendant's vehicles consistently resulted in increasing their hours each week. Being required to perform additional tasks throughout their day, which could include having to make additional stops, further contributed to Plaintiff and other ASTs having to work more hours than they were scheduled.

40. Due to these conditions, it was routine for Plaintiff and other ASTs to work well over forty (40) hours a week. They would typically work as many as fifty (50) to sixty (60) hours each week. There were times when they worked even more.

41. Plaintiff and other ASTs regularly communicated amongst themselves in regard to the excessive hours they were working.

42. Plaintiff and other ASTs would also regularly complain to Defendant's management about the long hours they worked. Plaintiff and other ASTs were required to fill-out log books and track all of their time. Accordingly, Defendant was well aware of the hours that its ASTs worked.

43. Plaintiff and other ASTs were all paid an hourly rate for the work they performed.

44. Plaintiff was paid an hourly rate of approximately sixteen dollars ($16.00) an hour. Defendant's other ASTs were paid similar rates.

45. Defendant classified all of its ASTs as overtime exempt employees who were not entitled to overtime pay. Based on this classification, Plaintiff and other ASTs were only paid their regular rate of pay ("straight time") for all hours worked, regardless of how many hours they worked that week.

46. Plaintiff and other ASTs failed to receive overtime wages.

47. Plaintiff and other ASTs were never compensated at a rate of "time and a half" their regular rate of pay for all hours worked over forty (40) each week. This was despite the fact that they regularly drove vehicles that weighed less than ten thousand (10,000) pounds.

48. Because Plaintiff and other ASTs regularly drove vehicles that weighed less than ten thousand (10,000) pounds, they were not subject to the Motor Carrier Act ("MCA") exemption to the FLSA. Accordingly, they would fall within the category of "covered employees" under the Technical Corrections Act ("TCA"), leading to their entitlement to overtime pay.

49. Defendant required, suffered and/or permitted Plaintiff and other ASTs to work overtime regularly.

50. However, Defendant refused to pay its ASTs overtime wages.

51. There is no bona fide dispute that Plaintiff and other ASTs are owed overtime wages.

52. The duties performed by Plaintiff and other ASTs did not meet the criteria for any overtime exemptions contained within the FLSA or applicable state wage laws.

53. In bad faith, Defendant willfully withheld the overtime wages owed to Plaintiff and other ASTs.

54. Consequently, on behalf of themselves and all those similarly situated, Plaintiff seeks the wages to which he is entitled and other relief available through this Complaint.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

55. Plaintiff and other similarly situated employees work or worked as Armed Service Technicians ("ASTs") for Defendant.

56. The FLSA requires employers to pay non-exempt employees such as Plaintiff and others similarly situated overtime wages for all hours worked over forty (40) within a workweek.

57. Defendant knew that Plaintiff and similarly situated employees typically worked over forty (40) hours per week.

58. Defendant suffered or permitted Plaintiff and other ASTs to work more than forty (40) hours per week.

59. Defendant knew or should have known that Plaintiff and those similarly situated were entitled to overtime pay for all hours worked over forty (40) in a workweek.

60. Pursuant to the FLSA, Plaintiff commences this collective action against Defendant on behalf of himself and those similarly situated.

61. Plaintiff demands damages reflecting an overtime rate of not less than one and a half (1.5) times his regular rate of pay for all hours worked over forty (40) in any workweek within the applicable statute of limitations. Plaintiff makes these same demands on behalf of all members of the putative class.

62. Plaintiff consents to be party plaintiff in this matter. Plaintiff's consent form is attached to this Complaint as Exhibit A.

63. It is likely that other individuals will join Plaintiff during the litigation of this matter and file written consents to "opt-in" to this collective action.

64. There are numerous similarly situated current and former employees of Defendant that have been harmed by Defendant's common scheme to underpay its employees and violate the FLSA.

65. These similarly situated persons are known to Defendant and are readily identifiable through Defendant's records.

66. Many of these similarly situated employees would benefit from the issuance of court-supervised notice, granting them the opportunity to join this lawsuit.

67. Upon information and belief, others will choose to join Plaintiff in this action against Defendant and opt-in to this lawsuit to recover unpaid wages and other available relief.

## **CLASS ACTION ALLEGATIONS UNDER MARYLAND WAGE LAWS**

68. Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and other employees, current and former, that worked as ASTs for Defendant and were subject to the following practices and policies: denial of overtime wages under Maryland Wage Laws for hours worked over forty (40) in a single workweek.

69. Plaintiff is a member of the proposed class he seeks to represent and is an adequate representative thereof.

70. The claims alleged by Plaintiff are typical of the claims of the proposed class.

71. The potential members of the class are sufficiently numerous that joinder of all class members is impractical.

72. There are questions of law and fact common to the class that predominate over any questions exclusive to the individual class members.

73. Counsel for the proposed class are qualified and experienced in litigating class actions and other complex litigation matters. Counsel is capable of providing adequate representation for all members of the proposed class.

74. A class action is superior to other available methods for the fair and efficient adjudication of this case and will serve to promote judicial economy to the benefit of this Court, as well as the involved parties.

75. Therefore, a class action should be certified in this matter.

## CAUSES OF ACTION AND VIOLATIONS OF LAW

### *Count I - Violation of the FLSA: Failure to Pay Overtime Wages to Plaintiff and all Members of the Collective Class Who, During The Course of This Matter, Opt-In to the Suit*

76. Plaintiff hereby fully incorporates in this Count all allegations contained within Plaintiff's Complaint.

77. Plaintiff is entitled to overtime under 29 U.S.C. § 207(a), which provides that employers must compensate their employees for hours worked in excess of forty (40) in a workweek at a rate of not less than one and one-half (1.5) times the regular rate at which they are employed.

78. As described above, Plaintiff has not received from Defendant compensation reflecting the prescribed overtime wage rate for hours worked in excess of forty (40) in a workweek; Defendant failed to compensate Plaintiff for these additional hours.

79. Defendant willfully and intentionally failed to compensate Plaintiff for the overtime wages he is owed.

80. There is no bona fide dispute that Plaintiff is owed overtime wages for the work he performed for Defendant.

81. Under the FLSA, Plaintiff is entitled to additional wages from Defendant to compensate him for the hours he worked in excess of forty (40) in a workweek at a rate of one and one-half (1.5) times his regular hourly wage rate.

***Count II. Violation of MWHL: Failure to Pay Overtime Wages to Plaintiff and all those that are Joined as Party Plaintiffs in this Matter by Motion or by Any Other Means***

82. Plaintiff hereby fully incorporates in this Count all allegations contained within Plaintiff's Complaint.

83. Pursuant to Md. Code Ann., Lab. & Empl. § 3-415, each employer shall pay an overtime wage of at least one and one half (1.5) times the regular hourly rate.

84. Pursuant to Md. Code Ann., Lab. & Empl. § 3-420(a), an employer shall compute the wage for overtime under Md. Code Ann., Lab. & Empl. § 3-415 on the basis of each hour over forty (40) that an employee works during one (1) workweek.

85. Plaintiff has not received compensation from Defendant reflecting the prescribed overtime wage rate for hours worked in excess of forty (40) in a week.

86. Defendant willfully and intentionally did not compensate Plaintiff for the overtime wages he is owed.

87. There is no bona fide dispute that Plaintiff is owed overtime wages for work performed for Defendant.

88. Under MWHL, Plaintiff is entitled to additional wages from Defendant for all overtime hours worked at a rate of one and one-half (1.5) times his regular hourly wage rate.

***Count III - Violation of the MWPCL: Failure to Pay Wages Owed at the Termination of Their Employment to Plaintiff and All Those that are Joined as Party Plaintiff in this Matter***

89. Plaintiff hereby fully incorporates in this Count all allegations contained within Plaintiff's Complaint.

90. Plaintiff is entitled to wages under the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl. §§3-501, *et. seq.*, which provides that each employer shall pay an employee all wages due for work that the employee performed before the end of employment, on or before the day on which the employee would have otherwise been paid the wages.

91. Plaintiff has not received compensation from Defendant for all wages owed for the work he performed before the termination of his employment, as required by Md. Code Ann., Lab. & Empl. §3-505(a). This is specific to Defendant's failure to pay Plaintiff the overtime wages to which he is entitled.

92. Defendant willfully and intentionally did not compensate Plaintiff for the wages owed to him and continued to violate the MWPCL, even after Plaintiff informed Defendant of the violation.

93. Under the MWPCL, there is no bona fide dispute that Plaintiff is owed wages for the work he performed during his tenure.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of himself and others similarly situated, prays for the following relief:

a) In accordance with 29 U.S.C. § 216(b), designation of this action as a collective action on behalf of Plaintiff and those similarly situated;

b) Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names, addresses and emails of all those individuals who are similarly situated and permitting Plaintiff to send notice of this action to all those similarly situated individuals;

c) Designating the named Plaintiff to act as class representatives on behalf of all employees for the FLSA collective class and the MWHL class;

d)     Judgment against Defendant for its failure to pay Plaintiff and those similarly situated in accordance with the standards set forth by the FLSA;

e)     Judgment against Defendant for its failure to pay Plaintiff and those appropriately joined to this matter in accordance with the standards set forth by MWHL;

f)     Judgment against Defendant for its failure to pay Plaintiff and those appropriately joined to this matter in accordance with the standards set forth by the MWPCL;

g)     Judgment against Defendant and classifying its conduct as willful and not in good faith;

h)     Judgment against Defendant and classifying Plaintiff, the collective class and those appropriately joined in this matter as non-exempt employees entitled to protection under the FLSA, MWHL and the MWPCL;

i)     An award against Defendant for the amount of unpaid overtime wages owed to Plaintiff and those similarly situated, calculated at a rate that is not less than one and a half (1.5) times Plaintiff and other similarly situated employees' regular hourly rate for all overtime hours worked;

j)     An award of liquidated or trebled damages equal to, or double, the total amounts of unpaid wages owed to Plaintiff and those similarly situated, whichever is deemed just and equitable by this Honorable Court;

k)     An award of reasonable attorneys' fees and all costs, plus pre-judgment and post-judgment interest, to be satisfied in full by Defendant;

l)     Leave to add additional Plaintiffs to all claims by motion, through the filing of written consent forms, or any other method approved by this Honorable Court; and

m)     All further relief deemed just and equitable by this Honorable Court.

## REQUEST FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff requests that a jury of his peers hear and decide all possible claims brought on behalf of Plaintiff and those similarly situated.

Respectfully submitted,

*/s/ Benjamin L. Davis, III*
Benjamin L. Davis, III, Esq. (29774)
bdavis@nicholllaw.com
Kelly A. Burgy, Esq. (20758)
kburgy@nicholllaw.com
Scott E. Nevin, Esq. (22478)
snevin@nicholllaw.com
The Law Offices of Peter T. Nicholl
36 South Charles Street, Suite 1700
Baltimore, Maryland 21201
Phone No.: (410) 244-7005
Fax No.:    (410) 244-8454

*Attorneys for Plaintiff*